STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
SUPERIOR ~~COURT~~
CLERK'S OFFICE

2007 AUG 14 P 1: 58

SUPERIOR COURT
CRIMINAL ACTION
Docket No. CR-07-412
WSB- CUM - 8/14 2007

STATE OF MAINE,

v.                                                    DECISION

TYSHIEM BROWN,

    Defendant.

DONALD L. GARBRECHT
LAW LIBRARY

JAN 07 2008

## FINDINGS

1.    Det. Sean Lally first interviewed defendant Tyshiem Brown concerning allegations of unlawful sexual contact on December 13, 2006. Mr. Brown denied the charges.

2.    Det. Lally next requested that Mr. Brown undergo a polygraph examination. Mr. Brown agreed because he wanted to prove his innocence.

3.    On January 18, 2007, Det. Lally drove Mr. Brown to the polygraph exam at the Scarborough Police Department. On the way Det. Lally told Mr. Brown that whatever happened, he would not be arrested that day.

4.    Mr. Brown was at the station approximately 4 ½ hours. The examiner explained how the process worked to Mr. Brown and then thoroughly explained Miranda to Mr. Brown, receiving an acknowledgment of understanding and waiver on each right. The examiner then questioned Mr. Brown for 2 ½ hours. The examiner then left Mr. Brown alone for a short time to analyze the results.

5.    After his analysis, the examiner returned to the examination room to inform Mr. Brown that in his opinion, Mr. Brown had clearly been deceptive. After

exhorting Mr. Brown for approximately 15 minutes to tell the truth, the examiner left the room to speak with Det. Lally.

6. After a few minutes Det. Lally entered the examination room and told Mr. Brown that it was time for him to start telling the truth and accept responsibility for what he had done. Det. Lally did not re-Miranda Mr. Brown; nor did Det. Lally tell Mr. Brown that the Miranda warnings administered by the examiner were still in effect.

7. For the next half hour or so, Det. Lally told Mr. Brown that he molested the victim, he knew he had done it and that it was time to accept responsibility for what he had done. He told Mr. Brown that he needed help and could get help when he accepted responsibility. Det. Lally told Mr. Brown at least twice and perhaps three times that what had been said before didn't matter. In effect Det. Lally told Mr. Brown that they were starting with a clean slate and nothing that had been said earlier in the day mattered.

8. Mr. Brown felt he couldn't leave the interrogation. Mr. Brown concluded that Det. Lally was not going to let him leave until he confessed. Mr. Brown made some damaging admissions during this last interrogation by Det. Lally.

9. On the video and on the witness stand, Mr. Brown appeared to be inarticulate and uneducated.

## DISCUSSION

In determining whether Mr. Brown was in custody, the following facts are pertinent. Mr. Brown was interrogated at the Scarborough Police Department. The polygraph examination was initiated by Det. Lally. Mr. Brown agreed to it for his own reasons. Mr. Brown was told he wouldn't be arrested that day. Both Det. Lally and the examiner told Mr. Brown that he was guilty of a serious crime. They emphasized this again and again. The examiner and Det. Lally took turns interrogating Mr. Brown and

2

at one brief point, examined him together. There was no physical restraint. Mr. Brown was interrogated almost continually for 4 ½ hours although the first hour consisted of an explanation of the polygraph process. He was allowed one cigarette break. Mr. Brown, on the video and on the witness stand, appeared to be inarticulate and uneducated. Shortly after the explanation of Miranda rights, Mr. Brown denied molesting the victim. Two hours later when Det. Lally took over the interrogation, Mr. Brown admitted to some sexual contact.

Looking at the totality of the circumstances, I am satisfied that Mr. Brown was in custody and that the Miranda rights were inadequate. There is one factor that stands out in this analysis. Although Mr. Brown was told that he wouldn't be arrested that day and although the Miranda warnings were thorough, Mr. Brown was told repeatedly, when Det. Lally took over the interrogation some two hours after the warnings, that nothing that had been said before mattered. He was told that they were starting fresh. Det. Lally told him that he (Det. Lally) was going to disregard what had happened up to that point and Mr. Brown should, too. Det. Lally made no mention of Miranda.

An educated man might realize that Det. Lally meant that Mr. Brown's previous denials would not be held against him. An uneducated man like Mr. Brown, who, judging by his ability to communicate, is not very bright either, could reasonably conclude from Det. Lally's remarks that the Miranda explanations and the promise not to be arrested should be disregarded as well. Mr. Brown testified that he felt confession was the only way to end the interrogation.

I am further satisfied beyond a reasonable doubt that Mr. Brown's admissions were voluntary. Mr. Brown appeared to be calm throughout the interview. There was no crying. Most important, although he made admissions, he adamantly denied some

3

of the more serious accusations. He was careful to say that the sexual touching was above the clothing, not underneath it. He repeatedly denied digital penetration. There is no evidence that Mr. Brown was under the influence of drugs. Nor is there any evidence of mental illness. Although Det. Lally was insistent and repetitious, he used no physical coercion or threats. Nor did he make any specific promises. Although Mr. Brown gives the appearance of being uneducated and not particularly intelligent, there is no evidence that he is retarded. Having examined all of the facts, I am satisfied that the admissions were voluntary.

The clerk will make the following docket entry by reference:

Defendant's motion to suppress is granted in part and denied in part. Mr. Brown's admissions are suppressed for purposes of the State's case-in-chief but will be admissible if Mr. Brown takes the stand.

DATED:     August 14, 2007

_____
William S. Brodrick
Active-Retired Justice, Superior Court

4